IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY A. NUESSE,

                Plaintiff,              Case No. 3:09 CV 329

  -vs-

                                              MEMORANDUM   OPINION

MATTHEW D. KLINE, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendants City of Sandusky, Ohio, Matthew D. Kline, and Brian Crandall's ("Defendants") motion to dismiss for failure to state a claim filed on April 9, 2009.  (Doc. 13).  On May 5, 2009, Plaintiff Kimberly A. Nuesse ("Plaintiff") filed an opposition (Doc. 14), and Defendants filed a reply on May 15, 2009 (Doc. 16).

For the reasons stated below, the Court grants in part and denies in part Defendants' motion to dismiss.  (Doc. 13).

**I. Background**

On February 12, 2009, Plaintiff sued Defendants for sexual harassment, violation of Due Process under the United States and Ohio Constitutions, and wrongful termination.  (Doc. 1).  On August 7, 2006, Plaintiff began working as the Chief of Police for the City of Sandusky, Ohio.  (*Id.* at ¶ 10).  Plaintiff's Complaint lays out the factual allegations in this case.  (Doc. 1 at ¶¶ 10-32).  Plaintiff alleges that:  (1) in early November 2007, Defendant Kline, an employee of the City of Sandusky, remarked to plaintiff that he was going to enjoy having so many female department heads working for him (*Id.* at ¶ 11); (2) in early December of 2007, Defendant Kline moved his chair close to Plaintiff, touched her knee, and referred to her as "honey" while at work (*Id.* at ¶ 12); (3)  in early January of 2008, Defendant Kline again moved his chair close to Plaintiff and

placed his hand on her arm (*Id.* at ¶ 13); (4) on January 24, 2008, Defendant Kline put his hands on Plaintiff's shoulders while she was seated and "slightly rubbed" Plaintiff's shoulders while addressing supervisors (*Id.* at ¶ 16); (5) on February 26, 2008, at a meeting, Defendant Crandall, an employee of the City of Sandusky, told Plaintiff to "shut up" (*Id.* at ¶ 26); (6) on March 10, 2008, Plaintiff was placed on administrative leave (*Id.* at ¶ 32); and (7) on June 17, 2008 Plaintiff's employment was terminated. (*Id.* at ¶ 33). On or about April 16, 2008, Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("E.E.O.C."), and received a "notice of a right to sue" on or about November 25, 2008. (*Id.* at ¶¶ 7-8).

## II. Standard of Review

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). "To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 127 S.Ct. at 1965 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient

facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**III. Discussion**

Defendants argue that Plaintiff's sexual harassment, due process, and unlawful termination claims fail to state a cause of action. (Doc. 13). Plaintiff responds that the Complaint "sufficiently alleges facts which would entitle her to relief." (Doc. 14 at 7).

Section 1983 does not create any federally protected right, but instead creates a cause of action through which plaintiffs may enforce other federal rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion). Section 1983 provides a remedy for violations of federal constitutional rights under color of state law. Under 42 U.S.C. § 1983:

3

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

**A. Plaintiff's Title VII Claims**

Plaintiff states two cognizable types of sexual harassment causes of action: (1) hostile work environment sexual harassment and (2) *quid pro quo* sexual harassment. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 182 (6th Cir. 1992). "[T]he labels *quid pro quo* and hostile work environment are not controlling for purposes of establishing employer liability," but "are helpful...in making a rough demarcation between cases in which threats are carried out and those where they are not or absent altogether." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998).

Defendants argue that Plaintiff fails to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief", and thus, Plaintiff's Title VII claims must be dismissed. (Doc. 13 at 4). Plaintiff responds, indicating that Defendant Kline's conduct included "acts [that] were sexual in nature and based on Plaintiff's sex", and therefore creates a hostile work environment claim. (Doc. 14 at 4). Additionally, Plaintiff argues that the elements of *quid pro quo* sexual harassment are established, and the City of Sandusky may be vicariously liable for Defendant Kline's conduct. *Id.* at 5.

1. *Hostile Work Environment*

To prove a claim of hostile work environment based upon sexual harassment, a plaintiff-employee must show by a preponderance of the evidence:

> (1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a

> hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability.

*Thornton v. Federal Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

"A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citations omitted). In order to find a hostile work environment, "[b]oth an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*

> The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *See Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether-taken together-the reported incidents make out such a case." *Id.* The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility. *See id.* at 563. Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

*Id.* Defendants concede that Plaintiff, a female, is a member of a protected class. (Doc. 13 at 6). The determination of whether Plaintiff was subjected to unwelcome sexual harassment relies on "whether [Plaintiff] *by her conduct* indicated that the alleged sexual advances were unwelcome."

5

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986).  "The conduct at issue must be 'unwelcome' in that the plaintiff neither solicited it nor invited it *and* regarded the conduct as undesirable or offensive."  *Jaquez v. Herbert*, 447 F. Supp. 2d 858, 867 (N.D. Ohio 2006) (emphasis added) (quoting *Bell v. Berryman*, 2004 WL 1964915 (Ohio Ct. App. 2004)).

In the instant case, Plaintiff sufficiently alleges that the Defendants' conduct was regarded as undesirable or offensive.  Plaintiff claims that Defendants touched her knee and arm, called her "honey", massaged her shoulders, and told her to 'shut up'.  Plaintiff filed suit on the basis of these events and in her brief in opposition to the pending motion, Plaintiff makes the allegation that "such advances are certainly un-welcomed." (Doc. 14 at 4).  Furthermore, the complaint states that Plaintiff attempted to speak to the law director of the City of Sandusky about these incidents. (Doc. 1 at ¶ 18).  At this stage of litigation, under the standard for a motion to dismiss, these allegations sufficiently demonstrate plausibility that the Plaintiff, by her conduct, considered the Defendants' advances to be unwelcome.  Accordingly, Plaintiff adequately establishes the second element of a hostile work environment claim.

Under Title VII, the critical issue with respect to whether the harassment was based on her sex, as per the third element of a hostile work environment claim, "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, 510  U.S. at 25 (1993) (Ginsburg, J., concurring).  Conduct that unreasonably interferes with the individual's work performance, or even makes it more difficult to perform the job establishes harassment based on sex.  *Id.*  In the instant case, Plaintiff asserts that there should be a presumption that the Defendants' conduct was based on sex.  (Doc. 14 at 4). Plaintiff alleges that Defendant Kline stated that he would "enjoy having so many female

6

department heads working for him", in addition to calling Plaintiff "honey" and touching her on several occasions. (Doc. 1 at ¶ 11). Plaintiff also claims that, on one occasion, after Defendant Kline went "around the room shaking hands with each sergeant . . . [he] put his hands on her shoulders, slightly rubbing them while he addressed the supervisors." (*Id.* at ¶ 16). Accordingly, accepting these allegations as true, Plaintiff is not precluded by the third element from making a hostile work environment claim.

The fourth element of a hostile work environment claim involves the consideration of the totality of the circumstances, including frequency of events and severity. The conduct in question allegedly occurred on several occasions from December 2007 through March 2008. (Doc. 1). In terms of severity and degree of threat, Defendants' conduct included incidents of alleged touching, rubbing, and name-calling. Plaintiff suggests that the conduct in question created humiliating circumstances given Plaintiff's position as chief of police. The actual degree to which the conduct in question unreasonably interferes with Plaintiff's performance is unclear; however, this Court cannot make factual determinations at this stage. At this point, Plaintiff's allegations are sufficient to meet the tests applicable herein and defeat a motion to dismiss. Considering all of these factors, Plaintiff sufficiently alleges a claim for hostile work environment.

To establish vicarious liability with respect to co-worker harassment, Plaintiff must demonstrate "that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Kauffman*, 970 F.2d at 183 (quoting *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618 (6th Cir. 1986)).

7

Plaintiff sufficiently alleges a hostile work environment and therefore the employer, the City of Sandusky, if they knew or should have known of the charges, may be liable. Plaintiff essentially alleges that city officials knew of the conduct in question, and failed to implement appropriate corrective action. (*See* Doc. 1 at ¶¶ 12-18, 24, 27). Therefore, Plaintiff adequately states a claim.

2. *Quid Pro Quo*

Under a *quid pro quo* theory, Plaintiff must demonstrate: "(1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in tangible job detriment; and (5) the existence of *respondeat superior* liability." *Kauffman*, 970 F.2d at 186. The first, third, and fifth elements of *quid pro quo* mirror elements of hostile work environment sexual harassment, and therefore the Court shall not reexamine them.

With regard to the second element, Plaintiff sufficiently describes circumstances in which Defendants made unwelcomed sexual advances. Plaintiff alleges that Defendant Kline stated that he would "enjoy having so many female department heads working for him", in addition to calling Plaintiff "honey" and touching her on several occasions. Accordingly, Plaintiff sufficiently alleges facts satisfying the second element of *quid pro quo* sexual harassment.

With regard to the fourth element, Plaintiff contends that being placed on administrative leave and subsequently being terminated were retaliatory responses to refusals of compliance with

8

sexual demands. Plaintiff describes various sexual advances made by Defendants through touching and name calling. Plaintiff asserts that Defendants engaged in allegedly inappropriate conduct in violation of Title VII, and further indicates that Defendants terminated her in response to her E.E.O.C. claim. Accordingly, Plaintiff sufficiently alleges facts to establish the fourth element of *quid pro quo* and therefore states a claim upon which relief may be granted under a *quid pro quo* theory.

### B. Plaintiff's Due Process Claims

Plaintiff argues that the conduct of Defendant Crandall at a meeting constituted a violation of her right to due process under the United States and Ohio Constitutions. (Doc. 1 at ¶ 27). Defendants' respond, arguing that Plaintiff fails to state a claim and therefore the claim should be dismissed. (Doc. 13).

Under the Fourteenth Amendment to the United States Constitution, "No State shall...deprive any person of life, liberty, or property, without due process of law." The Due Process Clause of the Fourteentth Amendment creates three kinds of federal claims enforceable through 42 U.S.C. § 1983:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.*, freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. at 331, 106 S. Ct. at 664...The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. *Parratt*, 451 U.S., at 537, 101 S.Ct., at 1913; *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978)

> ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property").

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990). As Defendants note in their motion to dismiss (Doc. 13), "[t]he Ohio Supreme Court has held that the 'due course of the law' aspect of Section 16, Article I, of the Ohio Constitution is the equivalent of the Due Process Clause of the United States Constitution" and "[t]he analysis of 'due course of the law' claims made under the Ohio Constitution is the same as that of 'due process' claims under the United States Constitution." *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 201 (2008).

### 1. *Procedural Due Process*

To establish a procedural due process claim, several elements must be present. In *Chandler v. Chagrin Falls*, the Sixth Circuit explained that a plaintiff must establish "(1) that she has a life, liberty, or property interest protected by the Due Process Clause; (2) that she was deprived of this protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford her adequate procedural rights prior to depriving her of her protected interest." 296 Fed. Appx. 463, 469 (6th Cir. 2008) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999)). "Unilateral expectations of a property interest are insufficient to trigger due process concerns. Instead, property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules.' *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001)[1] (quoting *Parratt v. Taylor*, 451 U.S. 527, 529

---

[1] In *Wojcik*, the Sixth Circuit suggests that substantive due process claims involve the same analysis. However, this view is at odds with virtually every other decision in this circuit on substantive due process and so the Court only applies *Wojcik* to the procedural due process portion of the instant case. *See e.g. Howard v. Grinage*, 82 F.3d 1343 (6th Cir. 1996).

(1981)). State deprivation of a constitutionally protected right must be accompanied by appropriate procedural safeguards according to federal law. *Vitek v. Jones*, 445 U.S. 480, 491 (1980).

The Constitution determines the adequacy of procedures to satisfy due process. *See Chandler*, 296 Fed. Appx. at 470 (citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). At a minimum, a deprivation of a protected interest "must be 'preceded by notice and opportunity for hearing appropriate to the case.'" *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Haag v. Cuyahoga County*, 619 F.Supp. 262, 280 (N.D. Ohio 1985) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Under Ohio Rev. Code § 124.34, individuals classified as civil service employees, such as Plaintiff in the instant case, may not be suspended or removed without notice and a hearing. Therefore, Ohio state law establishes a protected property interest in public employment.

Plaintiff argues that Defendant Crandall's conduct, telling her to 'shut up', was "contrary to the laws of the City of Sandusky", and that the remark violated her due process rights. (Doc. 14). Plaintiff alleges violations of due process with respect to the meeting, and not placement on administrative leave or termination. Plaintiff fails to identify a relevant property interest and fails to contest the adequacy of procedural due process notice or the adequacy of an opportunity to be heard, and therefore fails to establish a violation of procedural due process.

        2. *Substantive Due Process*

11

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright*, 510 U.S. at 272 (1994). Regardless of the fairness of procedures used, substantive due process serves the goal of preventing the use of governmental power for the purposes of oppression. *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Plaintiff points to no violation of any of these 'fundamental rights', and therefore this Court applies the "shocks the conscience" standard. *See Braley v. City of Pontiac*, 906 F.2d 220, 225-26 (6th Cir. 1990). Under the "shocks the conscience" standard, governmental officer behavior that is arbitrary and so outrageous that it may fairly be said to shock the conscience violates substantive due process notions. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998). "[C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 834. In *Rochin v. California*, 342 U.S. 165 (1952), the Supreme Court established the shocks the conscience standard. The Court stated "[i]llegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents-this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities." *Id.* at 172.

Here, Plaintiff suggests that Defendant Crandall's statement was contrary to law and in violation of due process. Plaintiff claims that Crandall turned a meeting that was supposed to be about dispatch into an "inquisition of one of plaintiff's subordinates" in violation of O.R.C. § 737.06, which gives exclusive control of the stationing and transfer of officers to the chief of police. Plaintiff's allegations are to be taken as true; however, the allegations must be enough to raise the right to relief above a speculative level. *Twombly*, 127 S.Ct. at 1969. Crandall telling

12

Plaintiff to "shut up" and nothing more when she allegedly interrupted him does not rise to the level of a constitutional deprivation. Even viewing all of Plaintiff's allegations as true, the conduct in question simply does not create a speculative chance of shocking the conscience. Accordingly, Plaintiff fails to sufficiently allege facts that state a claim with respect to substantive due process.

Plaintiff's due process claims are asserted only with regard to Defendant Brian Crandall's conduct. Plaintiff makes no other allegations against Crandall. As a result, Defendant Crandall is dismissed from this legal action.

### C. Plaintiff's Unlawful Termination Claims

Plaintiff argues that Defendants placed her on administrative leave and subsequently fired her unlawfully. (Doc. 1 at ¶¶ 28-33). Plaintiff's Title VII claims suggest that the termination was as a result of refusal of sexual advances. Therefore, Plaintiff sufficiently alleges facts to state a claim upon which relief may be granted with respect to unlawful termination.

## IV. Conclusion

For the above stated reasons, the Court grants in part and denies in part Defendants' motion to dismiss for failure to state a claim. (Doc. 13). Defendants' motion to dismiss is denied with respect to the sexual harassment and unlawful termination claims and granted with respect to the due process claims. The Court dismisses all claims against Defendant Brian Crandall, and thus he is dismissed from this suit.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE